(No. 16038.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HENRY WULFF, Plaintiff in Error.

*Opinion filed October 28, 1924.*

1. CRIMINAL LAW—*when witness may state result of investigation of accounts.* Where a fact can be ascertained only by the inspection of a large number of documents and books made up of numerous detailed statements, it is proper for a competent witness who has perused the entire mass to state summarily the net result of his investigation.

2. SAME—*when corpus delicti is not proved in embezzlement.* In a prosecution of a city employee for alleged embezzlement of funds collected by him in behalf of the city there is a total failure of proof of the *corpus delicti* where neither the city's accountant nor any other competent witness has directly testified, after an inspection of the accounts, that there is a shortage of funds belonging to the city or that money collected on behalf of the city was not paid into the city treasury.

3. SAME—*corpus delicti cannot be proved by confession.* The *corpus delicti* cannot be proved by the confession of the accused.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

SHORT & GUENTHER, and JAMES C. McGLOON, (THOS. E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Henry Wulff, was charged by an indictment, returned by the grand jury of the criminal court of Cook county, with embezzlement of $82,000 of the funds of the city of Chicago. The jury found him guilty

of embezzling the sum of $25,227.80. Motions for a new trial and in arrest of judgment were overruled and plaintiff in error was sentenced to imprisonment in the penitentiary. This writ of error is prosecuted to review that judgment.

Plaintiff in error was a clerk in the office of the city collector and performed his duties in a screened inclosure or cage numbered 34. During the lunch hour each day, and at other times, Wulff was relieved by other persons, who performed the duties in cage 34 during his absence. There were also at times other persons in the cage assisting Wulff in his duties. It was Wulff's duty to receive sums due the city for services rendered by the several departments. For instance, when a certain department (building, health, water or some other,) performed certain services it made out in quadruplicate a warrant of collection. One copy of the statement of amount due was mailed to the person owing the money to the city and another copy was sent to the city collector. These latter copies were distributed to the several clerks, some of them going to Wulff in cage 34. At the end of each day Wulff accounted for his collections to the cashier by delivering to the cashier the cash and checks received, together with a deposit slip showing the total amount received and the adding machine tape showing the several items received. During the course of Wulff's employment several persons and firms who paid their accounts with the city received no credit for the payment on the books of the city. For instance, the Armour Soap Works sent four checks totaling $13,728, and Marshall Field & Co. sent one check amounting to $11,500. All of these checks were made payable to the "city collector, city of Chicago," and all of them were regularly indorsed by the city collector and the city treasurer and were paid by the drawee bank to the city of Chicago. The accounts of the Armour Soap Works and Marshall Field & Co. with the city of Chicago were not credited with the amounts represented by these checks. An accountant employed by the city

testified that he had examined the books of the city of Chicago, and that his examination showed that Wulff had collected for the city of Chicago a total of $88,236.49 which had not been reported and which had not been properly credited to the debtors' accounts.

The prosecution rests its case largely upon the transaction concerning a check of the Armour Soap Works dated August 2, 1921, for $7462.95. This check was regularly reported to the cashier by Wulff on August 5, 1921, was duly indorsed by the city collector and the city treasurer on the same day, and was paid and the proceeds credited to the account of the city the following day. When questioned regarding the omission to credit the account of the Armour Soap Works, Wulff said that a confederate, whom he would not name, had taken amounts in excess of $7000 in cash from his cage. He stated that he made up this cash shortage by crediting the accounts that were paid in cash and omitting to credit the account that was paid by check, using the checks to cover the accounts for which cash had been received.

The record in this case is incumbered with much immaterial matter. Neither the prosecution nor the defense seems to have had any definite theory, and the questions propounded and objections made indicate that both were groping in unfamiliar territory. If the prosecutor and the accountant had spent a day or two in consultation preparing the case the presentation of the evidence would have been simple. Neither of them seemed to know what was needed to establish the guilt of the accused, or how to make the proof if they had found out what was necessary to be proven. The accountant testified that he spent six months examining the books and reaching his conclusion, but he does not testify to any facts that connect Wulff with any of the books or documents examined by him except the deposit slips and the adding machine tapes. These slips and tapes were regular on their face and showed that Wulff had prop-

erly accounted for his collections. The accountant testified to a large sum of money that had been collected and not properly credited, but he did not testify that the city did not get the money. In the case of the five checks hereinbefore mentioned the accounts were not properly credited, but the proof shows that the city did collect the money represented by these checks. There was therefore no shortage as far as these checks were concerned, and there is no proof that the omission to properly credit the accounts of the drawers of the checks was Wulff's omission. The record shows beyond a doubt that these checks were not stolen and converted, and if an amount of money equivalent to. the amount of the checks has been embezzled the State has failed to prove it. Where, as in this case, a fact can be ascertained only by the inspection of a large number of documents and books made up of numerous detailed statements, it is proper for a competent witness, who has perused the entire mass, to state summarily the net result of his investigation. (2 Wigmore on Evidence,—2d ed.—sec. 1230; *People* v. *Sawhill,* 299 Ill. 393; *People* v. *Gerold,* 265 id. 448.) It was therefore proper for the city's accountant to state what he had himself ascertained by a personal examination of the records concerning Wulff's account with the city. If the records show that money collected on behalf of the city has not been paid into the city treasury it was proper for the accountant to state that fact. But the accountant did not say that there was a shortage in the funds of the city. No place in his testimony does he state that money has been collected on behalf of the city which has not been paid into the city treasury. There is a total failure of proof of the *corpus delicti.* If there is a shortage in the city's funds it can be readily proven, but no person can be convicted of embezzling money from the city until it is proven that some of the funds belonging to the city have been embezzled. The *corpus delicti* cannot be proven by the confession of the accused. (*Wistrand* v. *People,* 213

313—19

Ill. 72; *Williams* v. *People,* 101 id. 382; *May* v. *People,* 92 id. 343.) It must be conceded that the conduct and statements of the accused are hardly consistent with innocence, but a conviction for embezzlement cannot be sustained until evidence is produced which warrants the conviction. On what theory the jury reached the conclusion that Wulff had embezzled the sum of $25,227.80 and not some other sum is not revealed by this record. There are no figures or combination of figures found in the record presented that will produce this sum. This, alone, would not be ground for reversal, but it shows that the verdict of the jury is not based on the evidence.

For the reason that the evidence in this record does not establish the *corpus delicti* the judgment is reversed and the cause is remanded.

*Reversed and remanded.*